Filed 5/27/14  Marriage of Browne CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of SHERRY BROWNE and JASON BROWNE.<br><br>SHERRY BROWNE,<br>       Respondent,<br>v.<br>JASON BROWNE,<br>       Appellant. | A139607<br><br>(San Mateo County Super. Ct. No. F0107505) |

Appellant Jason Browne appeals from a post-judgment order in this marital dissolution action (1) denying his request to impute income to respondent Sherry Browne[1]; (2) clarifying the parties' marital settlement agreement (MSA) to require Jason to pay child support on a certain percentage of his wage increases; and (3) awarding sanctions to Sherry pursuant to Family Code section 271.[2]  We affirm.

BACKGROUND

The parties' marriage terminated in December 2011 pursuant to a judgment incorporating their MSA.  Under the MSA, Sherry assumed primary physical custody of

---

[1]     For convenience, we hereafter refer to the parties by their first names.  We do not intend this informality to reflect a lack of respect.

[2]     All undesignated section references are to the Family Code.

their two minor children and Jason paid her a monthly amount of child support based on his then-current salary.[3] The MSA further provided for Jason to pay additional child support "on any bonus or additional income above this amount as and for child support as set forth in the attached bonus schedule." The referenced "bonus schedule" is a computer-generated chart providing a varying percentage of "Father's Bonus," depending on the size of the bonus, be paid as child support.[4] Sherry was not employed at the time judgment issued and had no income under the MSA for purposes of calculating child support. The MSA provided, "Jason will agree not to seek to have income imputed to [Sherry] before September 2011, when both children are in school. [Sherry] shall commence seeking work in September 2011 when both children are in school."[5]

In January 2012, Jason filed a motion seeking, inter alia, to impute income to Sherry for purposes of child support or, in the alternative, an order that she apply to at least five jobs every two weeks. Jason also requested Sherry undergo vocational evaluation. In Sherry's response, she readily agreed to undergo vocational evaluation. She stated she applied for 45 jobs between September 2011 and January 2012 but did not secure a single interview. Sherry had work experience but left the workforce in 2004, shortly after the birth of their first child. In light of the discouraging results of her job search, Sherry was taking concrete steps to pursue a career in nursing. Sherry stated she had conveyed this information to Jason and had provided him proof of her job search efforts. At the March 2012 hearing on Jason's motion, the trial court declined to impute income, noting Sherry was out of the workforce "pretty much the entire length of the marriage. So we have to give her time to get back in, and we'll see what the vocational evaluation is. And she's to follow the recommendations in the vocational evaluation."

---

[3]     The MSA's spousal support provisions are not at issue in this appeal.

[4]     The trial court and parties refer to this as a "Smith/Ostler" payment. (See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 37 [affirming order for "additional support, based on a percentage of [the husband's] future bonuses"].)

[5]     The term was apparently negotiated as part of an April 2011 memorandum of understanding, the terms of which were incorporated into the MSA.

2

The written order, filed in June 2012, also required Sherry to apply for at least five jobs every two weeks, even when attending school.

In September 2012, the vocational evaluation was complete. The evaluator concluded pursuit of a nursing degree "is a reasonable choice" for Sherry, she could attain the degree in the spring of 2016, and her starting salary as a registered nurse would be approximately $65,000 to $70,000 per year. The evaluator made a number of specific recommendations regarding education, related volunteer work, and the pursuit of temporary work when Sherry was not in school. The evaluator also concluded, if Sherry did not have the resources to pursue a nursing degree she should pursue administrative support work at a starting salary of $14 to $20 per hour.

Shortly thereafter, Jason filed an order to show cause seeking a small change in the custody schedule and to recalculate the child support based on "current support guidelines and actual timeshare." During the November 2012 hearing, Jason raised the issue of Sherry's lack of employment and job search efforts. In response to the trial court's questioning, Sherry represented that she was attending school full-time and complying with both the court's order to look for work and the recommendations of the vocational evaluation. Jason argued she had not pursued work with a temporary employment agency, and the trial court ordered Sherry to do so. Jason told the trial court he wanted to impute income and the trial court told him he needed to file a motion: "If you want to impute income, you have to put a request in there. And you have to show what jobs were available. For child support you need to show there were jobs available that she didn't apply for and could have had that wouldn't have interfered — because she's a full time student . . . so it needs to be something that would work with her schedule." The court's written order issued on December 3, 2012 and directed Sherry to "[a]pply for work at temporary employment agencies. [Sherry] will not be required to accept work that interferes with her school schedule."

Ten days later, Jason filed a request seeking 11 separate forms of relief, five of which Sherry agreed to in her response. One of the agreed upon items was Jason's request to "[c]larify [the] MSA by adding 'salary increases' as specific additional income

3

that is paid according to the current Smith/Ostler bonus table to [Sherry]." Jason also sought to impute income of $43,669 to Sherry, based on the salary of a full-time administrative support position, retroactive to January 2012. Jason argued Sherry was refusing to register with temporary employment agencies, but attached correspondence in which Sherry stated she had contacted two such agencies. In response, Sherry contended she was following the recommendations of the vocational evaluation and was applying for temporary employment work which did not interfere with her school schedule pursuant to the trial court's most recent order. Sherry also sought an award of attorney fees and costs as sanctions under section 271 based on Jason's "extremely litigious course of conduct," citing his multiple post-judgment motions (not all of which have been included above), citing the fact that many of the requests in his most recent motion could have been resolved outside of court, and arguing his motion to impute income presented no new evidence since the last hearing.

At the February 2013 hearing, the trial court addressed Jason's request regarding salary increases: "The Smith-Ostler doesn't apply to a raise, generally. But you have agreed to it" in the request. Jason denied he had agreed to it, and then withdrew his request regarding salary increases. The trial court noted Sherry had requested the same relief and granted the request. The trial court denied Jason's request to impute income "until after what it would normally take her to finish her [registered nurse] [p]rogram, unless you can prove to me she's refusing jobs that don't . . . interfere with school." Finally, the trial court awarded Sherry $3,000 in attorney fees as sanctions pursuant to section 271, telling Jason "you're bringing this thing back to court and back to court. . . . I just ruled on something and you have no new evidence to go to court. There's nothing new in here that says I should now impute income." The trial court later added, "I think [the sanctions order] is appropriate in this case because I think we're getting too many

motions filed." The written order, issued in August 2013, did not set forth any reasoning with respect to the orders at issue in this appeal.[6]

## DISCUSSION

### I. *Imputing Sherry's Income*

When determining a parent's income for purposes of calculating child support pursuant to the statewide uniform guideline (§ 4055), "[t]he court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children" (§ 4058, subd. (b)). This statute's emphasis on the best interests of the children is in accord with the statutory directive that "[t]he guideline seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).)

On appeal, Jason argues he need only demonstrate Sherry's ability and opportunity to work to be entitled to an order imputing income. This argument ignores both the trial court's discretion and the interests of the children.[7] Jason makes no attempt to reconcile the best interests of his children with the imputation of income to Sherry. Any such attempt would not be likely to succeed: "it is counterintuitive — often counterproductive — to impute income to a custodial parent, because the objective effect of such an

---

[6]     Jason did not request a statement of decision and the parties dispute whether he was entitled to one. We assume, without deciding, he was not, as our decision would be the same in either event.

[7]     Jason's contention that "[i]f the custodial parent has the current ability and opportunity to return to work, the court should impute income, despite the difficulty inherent in reconciling work with the need to care for children," citing *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988 (*Hinman*) for the proposition, is unavailing. First, *Hinman* properly recognizes the trial court's discretion. (*Hinman,* at p. 999 ["the trial court's order was not an abuse of discretion"].) Moreover, *Hinman* does not brush aside the interests of the children. In that case, income was imputed to the *noncustodial* spouse who had custody of children from a subsequent relationship. (*Id.* at p. 999.) The court found imputation of income "would be consistent with the [parties'] children's best interests." (*Id.* at p. 1000.) While the imputation might not be in the best interests of the children from the subsequent relationship, "section 4058, subdivision (b) does not require awards based on earning capacity to be consistent with the best interests of any child other than the child or children who are the subject of the child support award." (*Id.* at p. 1001.)

5

imputation will be to reduce the money otherwise available for the support of any minor children." (*In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 19 [finding order imputing income to custodial parent was abuse of discretion].) The trial court's refusal to impute income to Sherry was not an abuse of discretion.

II. *Jason's Salary Increases*

Jason argues the trial court's inclusion of his salary increases as a *Smith/Ostler* payment was error because the trial court failed to comply with section 4056. Section 4056, subdivision (a), requires a trial court to make certain findings when ordering child support that differs from the guideline amount. Sherry contends such findings were not required because the ordered amount did not differ from the guideline amount. We need not decide the issue because, as Sherry argues, salary increases are subject to the *Smith/Ostler* payment under the terms of the MSA.[8]

The MSA provides the *Smith/Ostler* payment be made "on any bonus or additional income above" Jason's salary at the time of the MSA. No definition of "income" is included in the MSA. "Income" for purposes of calculating guideline child support includes "salaries" and "wages." (§ 4058, subd. (a).) Accordingly, the provision appears, on its face, to apply to any wages, including wage increases.

However, Jason points to the provision's reference to the "attached bonus schedule" which provides a percentage of "Father's Bonus" be paid as child support. To the extent this attachment creates ambiguity about the meaning of the provision, we look to the intent of the parties. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1221 ["Statutory rules of construction and interpretation are generally applicable to marital settlement agreements that are incorporated into a dissolution judgment."]; *In re Marriage of Facter* (2013) 212 Cal.App.4th 967, 979 ["In general, an ambiguous or uncertain provision of a contract 'must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' "].) In a declaration

---

[8]    Neither party contends the trial court failed to make any necessary findings when adopting the MSA.

submitted with his December 2012 motion, Jason stated: "The MSA specifies 'additional income' should be paid to [Sherry] as a Smith/Ostler component. I interpret this to mean that salary increases are a part of this and they should be paid out at Smith/Ostler rates."[9] Sherry agreed with this interpretation. Accordingly, the MSA includes Jason's salary increases in the *Smith/Ostler* payments.[10]

Jason points to the trial court's comment at the hearing that the parties' "MSA doesn't say you pay Smith-Ostler on raises." In light of the uncontradicted evidence of the parties' intent, this finding was not supported by substantial evidence. This error is of no significance to our ruling, as we may affirm the trial court's order on any ground supported by the record. (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 632.)

III. *Sanctions Award*

Section 271 authorizes trial courts to award attorney fees as sanctions when a party's conduct "frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties . . . ." We review the order for abuse of discretion. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478.)

Although the written order does not state the basis for the sanctions award, at the hearing the trial court stated the sanction was because Jason was filing "too many motions," including the motion to impute income when he had "no new evidence" since the previous hearing. In light of Jason's aggressive litigation approach, we cannot say this ruling was an abuse of discretion.

Jason notes the trial court stated at the November 2012 hearing that he could file a motion to impute income. However, the trial court based sanctions on the history of "too many motions," not just the motion to impute. Moreover, at the prior hearing the trial

---

[9] Jason makes much of the fact that he withdrew his request regarding salary increases prior to the trial court's ruling, but he does not contest — or cite any record evidence contradicting — this statement in his declaration.

[10] Neither party argues that this decision by the court sets child support below the guideline amount.

court directed Jason any motion to impute must "show there were jobs available that she didn't apply for and could have had that wouldn't have interfered — because she's a full time student . . . so it needs to be something that would work with her schedule," such as "work on a temporary basis that you work a couple days here and a couple days there." Jason ignored this direction when he subsequently requested imputed income of a full-time salary and argued Sherry was not applying for jobs without showing those jobs were compatible with her school schedule.

Finally, Jason argues the trial court's sanction order rested in part on his refusal to consider a settlement offer from Sherry. Jason contends he had inadequate notice he could be sanctioned for this conduct. (See § 271, subd. (b) [sanction "shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard"].) We do not agree the sanction was based on this conduct. Although the trial court mentioned it during the general discussion, when Jason specifically asked "Why am I being sanctioned? For what behavior?", the trial court's response referred only to his litigious conduct.

## DISPOSITION

The order is affirmed. Sherry is awarded her costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.